UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-20121-JLK

WARRIOR TRADING, INC., a Delaware
corporation and ROSS CAMERON, an individual,

      Plaintiffs,

vs.

DAVID JAFFEE, individually, or in concert
with an unknown entity, doing
business as "Best Stock Strategy",

      Defendants.
_____/

## ORDER GRANTING PRELIMINARY INJUNCTION

THIS PROCEEDING came before the Court upon Plaintiffs' Verified Complaint [DE 1] Expedited Motion for Temporary Restraining Order [DE 4] ("Motion") and the Court's Order Setting Evidentiary Preliminary Injunction Hearing [DE 5]. As set forth in the Motion, Plaintiffs seek a preliminary injunction order requiring Defendants, and any others acting in concert with them, to remove all false and defamatory statements about Plaintiffs from the "Best Stock Strategy" YouTube Channel and or elsewhere that they have published false and defamatory statements about Plaintiffs.

On January 11, 2019, the Court entered its Order Granting Plaintiff's Expedited Motion for Temporary Restraining Order ("TRO"). The Court also set a hearing on the requested preliminary injunction, which was held beginning at 10:30 a.m. on January 15, 2019.

Defendant received notice of the TRO and the hearing by service of process on January 11, 2019 at 12:28 p.m. Defendant David Jaffee appeared for the hearing without counsel. Mr. Jaffee represented that he had attempted to obtain counsel, but had been unable as of the date

of the hearing. The Court found that Mr. Jaffee's failure to obtain counsel was not a sufficient reason to continue or postpone the hearing.

The Court reviewed evidence submitted at the hearing, referenced in the Court's Exhibit and Witness List [DE 8] including, the Declaration of Ross Cameron, the Declaration of Kerssaint Metellus with attendant Exhibits, YouTube screen-shots and a privacy policy from www.BestStockStrategies.com. The Court also again reviewed the filings of record, including the Verified Complaint.

Based upon the evidence adduced and the record, and upon consideration of the arguments, a preliminary injunction is hereby **GRANTED**.

## FACTUAL BACKGROUND[1]

Warrior Trading is a trading education business. On its website, warriortrading.com, it hosts a large community of active day traders and investors, providing educational content to its followers and premium members daily. Warrior Trading relies, in part, on positive reviews and feedback from its current and former students regarding Warrior Trading's services as well as sophisticated and expensive marketing in order to maintain and expand its business. Cameron is the founder of Warrior Trading, a full-time day trader, and the head trading mentor for Warrior Trading.

Mr. Jaffee does business through a website called "http://www.beststockstrategy.com". Defendant Jaffee also owns and operates a website dedicated to training people on stock trading and other topics (http://davidMr. Jaffee.com/). David Jaffee, individually or through an unknown entity, uses the name "Best Stock Strategy" elsewhere in the course of business. Here, the Court refers to "Best Stock Strategy" as the business being conducted by David Jaffee,

---

[1] The factual background is taken from Plaintiff's Verified Complaint, the Motion and evidence presented at the hearing.

2

regardless of whether through a legal entity, or registered or unregistered fictitious name. The Privacy Policy entered into evidence at Exhibit 5 [DE 8] claims that Best Stock Strategy is a Florida limited liability company, but counsel for Plaintiffs represented that she was unable to locate in the Florida Division of Corporation's website a Florida limited liability company called "Best Stock Strategy, LLC" and, at this time, no such entity has been named in this litigation or served with process. Best Stock Strategy is a direct competitor of Warrior Trading in providing trading education.

Best Stock Strategy also operates a YouTube channel, where it publishes videos and makes statements that are accessible to the public. Mr. Jaffee is the founder and head trading coach for Best Stock Strategy, that is, he holds basically the same role as Cameron does with Warrior Trading. Mr. Jaffee claims to make "around a million dollars a year by trading stock options." *See* https://www.youtube.com/watch?v=hQR5mPdIj2k. Best Stock Strategy markets itself as having "Free Trading from the Only Legitimate Stock Market Coach" and Mr. Jaffee purports to be "the Best Coach for You."

On or about November 3, 2018, Defendant published a video on Best Stock Strategy's YouTube channel titled, "Live Trading and Day Trading is a Scam & Fraud" ("First Video"). *See* https://www.youtube.com/watch?v=hQR5mPdIj2k. On or about November 7, 2018, Defendant published a video on Best Stock Strategy's YouTube channel titled, "Warrior Trading SCAM & FRAUD Ross Cameron scam FAKE REVIEWS" ("Second Video"). *See* https://www.youtube.com/watch?v=MPpq5VWeYRY. In the First Video and Second Video, Defendant published false statements about Plaintiffs, including specifically that:

    a.    Plaintiffs are "all criminals and they deserve to be in jail." (V1$^2$ 0:26-0:39)

---

[2] Citations to the time stamps of the First Video are "V1" and to the Second Video are "V2"

    b.    Plaintiffs don't show actual transactions or statements and that "honestly if they did show you their brokerage statements I would think that they're going to be fake." (V1 0:40-1:00)

    c.    Any of those gurus[3] [referring to Warrior Trading and Cameron] "are complete fake gurus. They're criminals. They belong in jail." (V1 1:09-1:14)

    d.    "[A]ll of [Plaintiffs"] reviews are fake." (V1 4:14-4:37)

    e.    Plaintiffs are "criminals who are trying to take your money . . . you're going to lose all of your money . . . I will still be creating videos once you get defrauded by these criminals who belong in jail." (V1 6:37-6:47; 7:24-7:32; 7:44-7:57)

    f.    "websites like Warrior Trading are compete scams, rip-offs, and all their reviews are fake." (V2 0:11-0:30)

    g.    ". . . [his] students have messaged [him] and relayed stories about how they were scammed by these companies . . . [fell] for these [Plaintiffs'] scams." (V2 0:36-0:52)

    h.    "And make no mistake about it, these people like Ross Cameron and Warrior Trading they intentionally try to defraud and manipulate innocent people in order to separate them from their hard-earned money and they're criminals." (V2 0:51-1:16)

    i.    "[Plaintiffs] are 100 percent criminals." (V2 0:51-1:16)

    j.    "All of the reviews on Ross Cameron's website for Warrior Trading and WarriorTrading.com are completely fraudulent." (V2 0:51-1:16)

    k.    "you will never make any money by buying their products because their products are complete garbage and you're going to lose all of your money." (V2 4:25-4:42)

    l.    "You should try to buy one of these programs from Warrior Trading … and then you should experience how much anxiety and stress you are going to feel once you spend thousands of dollars only to then lose all of your money … you're going to lose all of your money." (V2 6:35-6:58)

    m.    "It will show you how Warrior Trading is a complete scam how they make up their fake reviews how they can't be trusted." (V2 8:02-8:11)

---

[3] In stock trading education, the term "guru" is frequently used to describe somebody who is the head trading mentor or coach.

4

    n.      "please share this comment and like this … because I don't want innocent people losing their money to these criminals who belong in prison." (V2 9:03-9:16)

    o.      "it turned out to be a scam, they get paid by crooks, they hide your reviews … these guys are they're like scammers, stay away…" (V2 10:47-11:16)

In the comments to the videos, Defendant has added to the false and defamatory statements in them: In the comment sections to the First Video and Second Video, Defendant published additional statements about Plaintiffs, including specifically that:

    a.      "Day traders = fraud victims"

    b.      "I put out a lot of free videos which are actually valuable, unlike day trading – since day traders are fraud victims."

    c.      "I'm an affiliate of Warrior Trading or a fake account, I know that they are fraudulent criminals, but I don't want others to know so I'm going to write this comments and try and convince other innocent people to be fraud victims."

    d.      "Ross is a fraud.  Fake reviews and he likely trades a practice account with fake money.  Day traders = scam victims"

    e.      "Warrior Trading also plants fake students in his chat room.  And… they've posted tons of FAKE comments on this video."

    f.      "So while you seem motivated to perpetuate fraud from people like Ross Cameron, I've chosen to have integrity and help people."

    g.      "Following frauds like … and Warrior Trading is not a good habit."

    h.      "I help people, I don't defraud them like Warrior Trading."

    i.      "Warrior Trading defrauds innocent people and perpetuates fraud."

    j.      "The evidence is pretty overwhelming that Warrior Trading is fraudulent.  I hope they sue me so that we can subpoena their trading records because not only do they leave fake reviews (and then market these fraudulent reviews as accurate to their fraud victim students), but … I don't believe they actually trade."

    k.      "Ross Cameron is a fraud who does not trade…"

l. "Warrior Trading is a scam…"

m. "Warrior Trading 'students' in their chat room are fake. They chat about their profits yet its fraudulent."

n. "Warrior Trading uses these fake chat members to perpetuate their fraud and make it seem like their students can actually make money. … Warrior Trading students = fraud victims."

o. "The intent of Warrior Trading is to defraud and exploit innocent people…"

p. "Ross Cameron is a fraud…"

q. "[Ross Cameron] doesn't trade and he's a criminal."

r. "Yes, fraud is what they're selling."

s. "Ross Cameron's intention is to defraud."

t. "Ross Cameron is a fraud and criminal. He steals millions from people every year… He's a wolf in sheep's clothing."

u. "When scammers come in, Warrior Trading, and tell people that they can help, people want to believe them. Which is what happens with Warrior Trading students. Since they are fraud victims."

v. "And, unlike Warrior Trading, my statements are not fake… my intention is to help others, not to defraud others like Warrior Trading."

Defendant requests that viewers "like," "share," and "comment" on the videos. As of the date of the hearing, the videos had been reviewed more than 40,000 times.

Plaintiffs demanded that Defendant cease making false statements regarding them, to remove the false and defamatory statements from Defendant's YouTube channel and elsewhere, and to retract and correct the false statements. Defendant failed to do so.

## LEGAL STANDARD

The Court must consider the same factors when considering whether to grant a temporary restraining order or a preliminary injunction. *Schiavo ex. rel Schindler v. Schiavo*, 403 F. 3d

6

1223, 1225-26 (11th Cir. 2005). To obtain a preliminary injunction, therefore, a party must establish (1) a substantial likelihood of success on the merits of its claims; (2) irreparable injury will be suffered if the preliminary injunction is not granted; (3) the threatened injury outweighs the harm that a preliminary injunction would inflict on the defendant; and (4) the entry of a preliminary injunction would serve the public interest. *Id.*; *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Unlike with a temporary restraining order, however, a court may issue a preliminary injunction only with notice to the adverse party. Fed. R. Civ. P. 65(b). At the preliminary-injunction stage, a court may consider affidavits and hearsay evidence that would not be admissible for a permanent injunction and may grant the preliminary injunction without finding that the evidence positively guarantees that the plaintiff will succeed on its claims. *Levi Strauss & Co.*, 51 F. 3d at 985.

## ANALYSIS

The declarations and other evidence submitted by Plaintiff in furtherance of its Motion supports the following conclusions of law:

**1. Plaintiffs have a substantial likelihood of success on the merits of their claims for defamation per se, defamation and a violation of the Florida Deceptive and Unfair Trade Practices Act.**

Plaintiffs are likely to prevail on their defamation and defamation *per se* claims because Plaintiffs have sufficiently demonstrated that (1) Defendant published false statements about Plaintiffs; (2) the false statement was communicated to a third party; and (3) the communication tended to subject Plaintiffs to hatred, distrust, ridicule, contempt, or disgrace, or tended to injure Plaintiffs in their trade or business. *Perry v. Cosgrove*, 464 So. 2d 664, 666 (Fla. 2d DCA 1985). Plaintiffs have identified numerous false statements displayed on the Defendant's YouTube

Channel that are false and plainly defamatory, and which are designed to impugn Plaintiffs' reputation and injure or harm their business. *LRX, Inc. v. Horizon Associates Joint Venture ex rel. Horizon-ANF, Inc.*, 842 So. 2d 881, 885 (Fla. 4th DCA 2003). Defendant's statements about Plaintiffs are defamatory *per se*.

Plaintiffs are equally likely to prevail on their claim under the Florida Unfair and Deceptive Business Practices Act ("FDUPTA"). Section 501.204 of the Florida Statutes makes unlawful "methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Here, Defendant's lying about a competitor to try to steal clients and harm and injure the competitor's business, reputation and goodwill is clearly prohibited and within the acts and practices that are prohibited by FDUPTA. *See Millennium Laboratories, Inc. v. Universal Oral Fluid Laboratories, LLC*, 2012 WL 19206334 (M.D. Fla. 2012), explaining that a deceptive act is one that is likely to mislead consumers. *Id. citing Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d, 1314, 1326 (M.D. Fla. 2007). An unfair practice is one that offends established public policy and that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. *Id.* Publishing false statements about competitors is a violation of FDUPTA.

### 2. Plaintiffs will suffer irreparable harm unless an injunction issues.

Defendant's statements impugn Plaintiffs in the practice of their trade and are defamatory *per se*. *See Friedman v. Schiano*, 2017 WL 2901211 (S.D. Fla. 2017) (false statements constitute defamation per se when they tend to subject plaintiffs to being avoided, distrusted, condemned, ridiculed and disgraced, and otherwise injure plaintiffs' personal, business and professional reputations, as well as accuse plaintiffs of committing crimes). Defamation *per se* creates a presumption of loss or damage. *See Commander v. Pedersen*, 156 So. 337, 341 (Fla.

1934); *see also Bobenhausen v. Cassat Ave. Mobile Homes,* 344 So. 2d 279, 281 (Fla. 1st DCA 1977), *cert. discharged,* 363 So. 2d 1065 (Fla. 1978). The business reputational damages and loss of goodwill are sufficient to demonstrate an irreparable injury. *See Marine Turbo Engineering, Ltd. v. Turbocharger Services Worldwide, LLC,* 2011 WL 6754058, at *10 (S.D. Fla. Dec. 22, 2011) (finding plaintiff demonstrated irreparable harm because loss of customers and goodwill is an irreparable injury); *Southeastern Mechanical Services, Inc. v. Brody,* 2008 WL 4613046, at *15 (M.D. Fla. Oct. 15, 2008) (loss of customer and goodwill is an irreparable injury and is difficult to measure); *Tiffany Sands, Inc. v. Mezhibovsky,* 463 So. 2d 349, 351 (Fla. 3d DCA 1985) (irreparable harm found from damage to goodwill and business reputation). Here, Plaintiff has also shown that it lost specific customers because of the false statements.

**3.    There will be no injury to the Defendant from the injunction.**

Defendant has no right to defame others, nor to engage in unfair and deceptive business practices. No harm will result to Defendant in issuing the injunction.

**4.    An injunction will serve the public interest.**

The public interest also favors entry of a preliminary injunction in this case because "the public is interested in fair competitive practices and clearly opposed to being deceived in the marketplace." *See SK & F, Co. v. Premo Pharmaceutical Laboratories, Inc.,* 625 F. 2d 1055, 1067 (3rd Cir. 1980). The very purpose of FDUPTA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's Motion for Preliminary Injunction is **GRANTED:**

1. Defendant David Jaffee and all others acting in concert with him, including the officers, directors, employees, agents, subsidiaries, and affiliates of any business entity through which Defendant Jaffee does business, whether as "Best Stock Strategy" or otherwise, and any others with actual notice of this order are directed immediately to remove completely the videos on Best Stock Strategy's YouTube channel titled, "Live Trading and Day Trading is a Scam & Fraud", published on or about November 3, 2018 ("First Video") and video titled, "Warrior Trading SCAM & FRAUD Ross Cameron scam FAKE REVIEWS" ("Second Video"), published on or about November 7, 2018 as well as all associated comments and content;

2. Defendant is directed immediately to remove from YouTube or from any other public or private forum, social or other media, any and all re-publication of the First Video and Second Video;

3. Defendant is directed immediately to remove from YouTube or from any other public or private forum, social or other media, any and all or videos containing any statements about Plaintiffs similar to those made in the First Video, Second Video and all associated comments and content;

4. Defendant is directed immediately to remove any tags, links or other searchable indicators referencing Plaintiffs from any videos or other content in which similar defamatory statements are made, whether or not the Plaintiffs' names are referenced in the video titles or explicitly in the video or other content;

5. Defendant is directed not to share the First Video or Second Video or any other material containing defamatory statements privately with any third party and to refrain from making statements to third parties similar to those made in the First Video, Second Video or comments;

6. Defendant is directed to refrain from making similar statements or comments during the course of these proceedings.

The Court finds that Plaintiffs are not required to post a bond. This Preliminary Injunction shall remain in effect until this matter is resolved or until such further dates as set by the Court or stipulated to by the parties. Plaintiff is directed immediately to serve copies of this Order and all other pleadings on Defendant. If, after entry of this Order, Plaintiff should discover a business entity affiliated with Defendant that is found to be doing business as "Best Stock Strategy", Plaintiff is directed to serve this Order upon that entity.

The parties are directed to coordinate with the Court, when they deem appropriate, a hearing on a motion for permanent injunction.

DONE AND ORDERED in Chambers in Miami-Dade County Florida, this 23 day of January, 2019.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

#7121382 v2